IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA

```
JONATHON ALEXANDER,                   )
                                      )
            Plaintiffs,               )
                                      )
v.                                    )   No. CIV-10-271-FHS
                                      )
KEN SALAZAR, Secretary of the         )
Interior for the United States        )
Court of Indian Appeals Serving       )
the Choctaw Nation; RANDY HAMMONS;    )
CHRISTY HAMMONS; DUSTY SMITH;         )
JEANETTE HANNAH, Regional             )
Director, Bureau of Indian            )
Affairs; CHOCTAW NATION OF            )
OKLAHOMA COURT OF GENERAL             )
JURISDICTION; and HONORABLE           )
STEVEN L. PARKER, Judge of            )
Choctaw Nation of Oklahoma Court      )
of General Jurisdiction,              )
                                      )
            Defendants.               )
```

**<u>OPINION AND ORDER</u>**

This matter is before the Court on Plaintiff's Motion for Temporary Restraining Order (Dkt. No. 16), Plaintiff's Request for Preliminary Injunction contained in the First Amended Complaint (Dkt. No. 15), the Motions to Dismiss by Defendants, Dusty Smith, Randy Hammons, and Christy Hammons (Dkt. Nos. 28 and 29, respectively), and the parties' jurisdictional briefs (Dkt. Nos. 34, 39, and 40).[1]  Having considered the submissions of the parties, the Court concludes it lacks subject matter jurisdiction.[2]

---

[1] The jurisdictional briefs were in response to an August 18, 2010, order requiring Alexander to show cause how this Court has jurisdiction over this matter.

[2] No hearing was necessary for the resolution of the jurisdictional issue before this Court as the essential factual

1

**BACKGROUND**

Plaintiff, Jonathon Alexander ("Alexander"), is the father of two children, J.J.A. and T.A., ages eight and six, respectively. Alexander has a long history of alcohol related issues and he was arrested and jailed for DUI on September 12, 2005. Alexander was incarcerated from September 12, 2005, until February 28, 2007. During his incarceration, Alexander's children were placed into the custody of the Choctaw Nation.[3] Shortly after his incarceration began, Alexander made arrangements to place his children under the care of guardians. With the assistance of a child welfare worker with the Bureau of Indian Affairs ("BIA"), Alexander placed J.J.A. with the Defendants, Randy and Christy Hammons ("Hammons"), and T.A. with Defendant, Dusty Smith ("Smith").[4] Under these guardianship arrangements, the Hammons and Smith would care for the children while Alexander was in prison and Alexander would resume custody and care of the children after his release from prison. Alexander was not obligated to support his children while he was

---

allegations of the First Amended Complaint are undisputed. See Ordinance 59 Association v. Babbitt, 970 F.Supp. 914, 918 (D. Wyoming 1997)(evidentiary hearing on issues of sovereign immunity and subject matter jurisdiction not necessary where "defendants do not dispute the complaint's factual allegations which are dispositive for the motions to dismiss."), aff'd, 163 F.3d 1150 (10th Cir. 1998).

[3] In his Response to Motions to Dismiss (Dkt. No. 32), Alexander notes that his children were "initially citizens of the Chickasaw Nation; it wasn't until after [Alexander] went to prison that the Defendant Guardians transferred the children's memberships to the Choctaw Nation."

[4] The guardianship of T.A. was with Dusty Smith and his wife at the time, LaVonda Smith. According to Alexander, after LaVonda Smith secured a divorce from Dusty Smith, she relinquished any rights or obligations with respect T.A. - although apparently without any judicial approval.

2

incarcerated and there was not any court order requiring child support.

Alexander was released from prison on February 28, 2007, and was placed on homebound detention (with an ankle monitor) at his father's home in Ada, Oklahoma. This homebound detention was to last until October, 2007. During this period of strict confinement, Alexander attempted to reestablish his relationship with his children in preparation for their return to him. Alexander sought assistance through the BIA child welfare worker, who told him in September, 2007, that she would not support any visitation as she was "for the adoption" by the guardians. Alexander contacted the Hammons to resume visitation with J.J.A., but was only able to set up a visit to see one of J.J.A.'s t-ball games in Rattan, Oklahoma.[5] Alexander had difficulty contacting Smith to resume visitation with T.A. It appears Alexander may have had some phone contact with Smith, but no visitation with T.A. was arranged.

In April, 2008, the Hammons and Smith petitioned to adopt the children without the consent of Alexander. These adoption petitions were filed in the District Court of Pushmataha County and were subsequently transferred to the Court of Indian Offenses, or C.F.R. Trial Court. Alexander contested the adoption petitions. The C.F.R. Trial Court conducted a hearing on the matter and, on July 11, 2009, denied the adoption petitions and the requests to terminate Alexander's parental rights. On September 9, 2009, the Hammons, Smith, and the Choctaw Nation appealed the C.F.R. Trial Court's decision. On June 21, 2010, the C.F.R. Court of Indian

---

[5] Alexander received the permission of his probation officer to make this visit during the period of his home confinement.

3

Appeals reversed the decision of the C.F.R. Trial Court. The C.F.R. Court of Indian Appeals ordered the termination of Alexander's parental rights and granted sole custody of J.J.A. and T.A. to the Hammons and Smith, respectively. On July 16, 2010, Judge Steven L. Parker of the Choctaw Nation of Oklahoma Court of General Jurisdiction denied Alexander's request to stay pending appeal to the United States Supreme Court and terminated all contact between Alexander and his children. In his Motion for Temporary Restraining Order (Dkt. No. 16 filed on August 8, 2010) Alexander contends Judge Parker will issue a ruling on the adoptions on August 13, 2010.[6]

During the course of these adoption proceedings, certain events took place which are at the heart of the dispute herein. The legislative body of the Choctaw Nation, the Tribal Council, determined that the judicial administration of justice of the Choctaw Nation was not being adequately served by the operation of the C.F.R. Courts under contract with the BIA. As a result, on April 11, 2009, the Tribal Council of the Choctaw Nation passed Council Bill CB-65-2009, which established a Court of General Jurisdiction for the Choctaw Nation of Oklahoma ("Choctaw Tribal Court") pursuant to the terms, conditions and provisions of An Act Establishing a Court of General Jurisdiction for the Choctaw Nation of Oklahoma (the "Act"). On April 14, 2009, the Chief of the Choctaw Nation signed Council Bill CB-65-2009. Under the terms of Council Bill CB-65-2009, the CFR Courts would cease to exist and would be replaced by the Choctaw Tribal Court "on and after the effective date of the Act." The Act was to become effective "upon approval of the amended self-governance compact by the United States Department of Interior" and "upon an Executive Order of the

---

[6] This Court has not been informed of any action taken by Judge Parker.

4

Chief directing the [Choctaw Tribal] Court to become fully functional." The Act was approved by the BIA on October 8, 2009. Thereafter, on February 4, 2010, the Chief of the Choctaw Nation issued an Executive Order Activating the Court of General Jurisdiction of the Choctaw Nation. This Executive Order directed that the Choctaw Tribal Court be fully functional as of February 4, 2010. The Executive Order further provided, however, that "the CFR Court of Appeals for the Choctaw Nation shall continue to function until all pending appeals are final therein" with any decisions of the CFR Court of Indian Appeals being "remanded to the Trial Division of the Court of General Jurisdiction of the Choctaw Nation for any post-appeal proceedings."

Alexander contends this February 4, 2010, Executive Order maintaining jurisdiction of pending appeals in the CFR Court of Indian Appeals is in violation of the separation of powers found in the Constitution of the Choctaw Nation as it is an exercise of legislative powers by the Executive branch through the Chief of the Choctaw Nation. Alexander contends that while Council Bill CB-65-2009 authorized the Chief of the Choctaw Nation to direct when the Choctaw Tribal Courts became "fully functional," neither Council Bill CB-65-2009 nor any provision of the Choctaw Constitution vested in him the authority to direct that pending appeals remain in the CFR Court of Indian Appeals.[7] Consequently, Alexander

---

[7] Alexander relies on language in both Council Bill CB-65-2009 and the Act in support of his argument that the Chief of the Choctaw Nation was limited to directing when the Choctaw Tribal Court became "fully functional." Council Bill CB-65-2009 provides that "*on and after the effective date of the Act*, the CFR Court will cease to exist and shall be replaced by the Court of General Jurisdiction for the Choctaw Nation of Oklahoma." (Emphasis added). Under Section 1.101 of the Act, the Choctaw Tribal Court has "general civil and criminal jurisdiction over" the Choctaw Nation and shall be assigned "all duties and jurisdiction of the CFR Court of Indian Offenses of the Choctaw

5

contends that the C.F.R. Court of Indian Appeals was without jurisdiction when it issued its decision on June 21, 2010, terminating his parental rights and granting custody of the children to the Hammons and Smith. Alexander has filed this federal court complaint asking this Court to invalidate the decision of the C.F.R. Court of Indian Appeals. In his Motion for Temporary Restraining Order (Dkt. No. 16), Alexander also seeks to enjoin Judge Parker, the Hammons, and Smith from going forward with any court proceedings involving the adoption of J.J.A. and T.A., and further, seeks an order restoring his visitation rights pending a trial on the merits in this Court.[8]

## **ANALYSIS**

Although there are various non-tribal defendants named herein, this is essentially an action brought by Alexander to invalidate a decision by the C.F.R. Court of Indian Appeals and to enjoin the newly-created Court of General Jurisdiction of the Choctaw Nation from adjudicating the adoption proceedings involving J.J.A. and T.A. At the heart of this action is Alexander's claim that the C.F.R. Court of Indian Appeals lacked the authority to render its June 10, 2010, decision terminating his parental rights and awarding custody to the Hammons and Smith. Resolution of this

---

Nation *immediately on the effective date*." (Emphasis added). Furthermore Secton 1.101 of the Act provides that "[a]ll pending cases in the CFR Court of Indian Offenses shall be transferred to the Court of General Jurisdiction."

[8] Alexander's request for a trial on the merits in this Court is confusing given his alternative requests in his pleadings for (1) the original decision of the C.F.R. Trial Court terminating the adoptions to stand as final, see Plaintiff's Response to Motions to Dismiss (Dkt. No. 32 at p. 8), (2) a new trial in the Choctaw Trial Court, see id., or (3) an appeal to the Choctaw Appellate Court, see Amended Complaint, ¶ 20.

claim requires an interpretation of the relevant Choctaw legislation, Council Bill CB-65-2009 and the Act, as well as the February 4, 2010, Executive Order. Moreover, the linchpin of Alexander's argument, i.e., that the Chief usurped a legislative function in issuing the February 4, 2010, Executive Order, implicates the Constitution of the Choctaw Nation.

In bringing this action and seeking federal court review, Alexander asserts several bases for this Court's jurisdiction. First, Alexander claims subject matter jurisdiction is appropriate under 28 U.S.C. § 1331, which provides that "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, law, or treaties of the United States." In order to invoke this Court's jurisdiction under section 1331, it is not necessary for Alexander assert a claim based on a federal statute or a provision of the Constitution; however, it is necessary for him "to assert a claim 'arising under' federal law." National Farmers Union Insurance Companies v. Crow Tribe of Indians, 471 U.S. 845, 850 (1985). This action, however, does not "arise under" any federal law within the meaning of section 1331. Rather, resolution of the issues and claims in this case involves an interpretation of a legislative enactment of the Choctaw Nation and the force and effect of an Executive Order issued by the Chief of the Choctaw Nation, with reference to the Choctaw Constitution for an examination of the separation of powers argument. No federal law is implicated. Alexander suggests that federal law is implicated because the C.F.R. Court of Indian Appeals is administered by the BIA pursuant to federal administrative regulations setting forth its jurisdictional limits. The Court disagrees as the baseline jurisdiction of the C.F.R. Court of Indian Appeals, before the adoption of the Choctaw Tribal Court system, is not an issue in this case. The issue is whether the

implementation of the new tribal court system was accomplished consistent with tribal legislation and tribal Constitutional provisions. These are issues "arising under" tribal law, not federal law.

Alexander relies on National Farmers Union for the proposition that federal courts "may determine under § 1331 whether a tribal court has exceeded the lawful limits of its jurisdiction." Id. at 853. National Farmers Union involved an action brought by the insurer of a non-Indian property owner to enjoin tribal officials and a tribal court from enforcing a default judgment awarding against the non-Indian property owner in a tribal court proceeding. In determining that federal court jurisdiction was properly invoked, the Supreme Court held:

> The question whether an Indian tribe retains the power to compel a non-Indian property owner to submit to the civil jurisdiction of a tribal court is one that must be answered by reference to federal law and is a "federal question" under § 1331. Because petitioners contend that federal law has divested the Tribe of this aspect of sovereignty, it is federal law on which they rely as a basis for the asserted right of freedom from Tribal Court interference. They have, therefore, filed an action "arising under" federal law within the meaning of § 1331. The District Court correctly concluded that a federal court may determine under § 1331 whether a tribal court has exceeded the lawful limits of its jurisdiction.

Id. at 852-53 (footnotes omitted). Alexander's claim differs in one significant respect from the claim in National Farmers Union. Unlike the plaintiff in National Farmers Union, Alexander is not contesting that federal law has divested a tribal court (here, the C.F.R. Court of Indian Appeals) of jurisdiction. Rather, Alexander contends the underlying parental rights/adoption suit exceeded the jurisdiction of the C.F.R. Court of Indian Appeals because of *tribal law* as manifested through the Choctaw Nation's legislative

8

and executive bodies. Thus, the jurisdictional implication of federal law, present in National Farmers Union by virtue of the assertion of tribal court jurisdiction over a non-Indian property owner, is lacking in the instant case. Consequently, because Alexander claim does not "arise under" federal law, the Court finds that section 1331 does not afford a basis for federal court jurisdiction.

Alexander also contends this action arises under the Commerce Clause, Article I, Section 8, and under 42 U.S.C. § 1983 *et* seq. In his jurisdictional brief to the Court, Alexander fails to establish how this action arises under the Commerce Clause. All that Alexander can offer is the statement that counsel "recalls reading a case that attributed the Commerce Clause to jurisdiction over the tribes, but is currently unable to locate or identify the case." Alexander's Response to Court Show Cause Order, p. 2 (Dkt. No. 34). This statement is insufficient to sustain Alexander's burden of establishing federal subject matter jurisdiction under the Commerce Clause. As to Alexander's contention that this claim arises under 42 U.S.C. § 1983, Alexander asserts that "a parent's fundamental right over the care, custody and control of their children has been held protected by the Due Process Clause of the Fourteenth Amendment." Id. at 3. While Alexander's statement is certainly true and 42 U.S.C. § 1983 has as its express purpose the enforcement of the provisions of the Fourteenth Amendment, Mitchum v. Foster, 407 U.S. 225, 238 (1972), 42 U.S.C. § 1983 nonetheless requires a showing of action taken under "color of state law" before federal court jurisdiction can be invoked. Jojols v. Chavez, 55 F.3d 488, 492 (10th Cir. 1995)(section 1983 litigation provides aggrieved persons with a forum to recover damages for "alleged violations of federal law committed by individuals acting under 'color of state law.'"). "The traditional definition of

9

acting under color of state law requires that the defendant in a § 1983 action have exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" West v. Atkins, 487 U.S. 42, 49 (1988)(quoting United States v. Classic, 313 U.S. 299, 326 (1941)). Alexander does not argue, and there is no evidence, that any defendant took action under "color of state law." As a result, 42 U.S.C. § 1983 is not an appropriate basis for the exercise of federal court jurisdiction.

Finally, Alexander attempts to invoke this Court's jurisdiction under the provisions of the Indian Civil Rights Act, 25 U.S.C. §§ 1301-1303 ("ICRA"). The ICRA "provides, as a matter of statute, for many of the same protections against tribal authority as would, in the case of federal or state authority, be provided as a matter of constitutional law." Cohen v. Winkleman, 428 F.Supp.2d 1184, 1187 (W.D. Okla. 2006). This includes the requirement that no Indian tribe "deprive any person of liberty or property without due process of law." 25 U.S.C. § 1302(8). Alexander contends due process has been violated when the C.F.R. Court of Indian Offense exercised jurisdiction "when it has no jurisdiction." Alexander's Response to Court's Show Cause Order (Dkt. No. 34 at 4).

In Santa Clara Pueblo v. Martinez, 436 U.S. 49, 58-59 (1978), the Supreme Court recognized that Indian tribes, as sovereigns, possess immunity from suit and it held that, in light of such immunity, the ICRA does not "authorize the maintenance of suits against a tribe nor does it constitute a waiver of sovereignty." Walton v. Pueblo, 443 F.3d 1274, 1278 (10th Cir. 2006)(citing Santa Clara Pueblo, 436 at 59). Additionally, "the ICRA does not create a private cause of action against a tribal official." Walton, 443

F.3d at 1278. The one exception to this holding is the ICRA's waiver of tribal immunity as to habeas corpus actions. Id. This broad construction of sovereign immunity recognized in Santa Clara Pueblo is premised, in large part, "on the assumption that tribal forums were available to vindicate the rights created by the ICRA and that tribal courts are 'appropriate forums for the exclusive adjudication of disputes affecting important personal and property interests of both Indians and non-Indians.'" Cohen, 428 F.Supp.2d at 1187(quoting Santa Clara Pueblo, 436 U.S. at 65)).

A limited exception to Santa Clara Pueblo's jurisdictional bar has been recognized by the Tenth Circuit Court of Appeals in Dry Creek Lodge, Inc. v. Arapahoe and Shoshone Tribes, 623 F.2d 682 (10th Cir. 1980). The Tenth Circuit's decision in Dry Creek "has come to stand for the proposition that federal courts have jurisdiction to hear a suit against and Indian tribe under 25 U.S.C. § 1302, notwithstanding Santa Clara Pueblo, when three circumstances are present: (1) the dispute involves a non-Indian; (2) the dispute does not involve internal tribal affairs; and (3) there is no tribal forum to hear the dispute." Walton, 443 F.3d at 1278.[9] Alexander's claim does not satisfy this test. While the record is silent as to any non-Indian involvement in this action, the underlying dispute clearly involves a matter of internal tribal affairs in the form of a claim that the Chief of the Choctaw Nation usurped legislative duties by issuing an Executive Order declaring that the C.F.R. Court of Indian Appeals retained jurisdiction over pending appeals. A clearer case of an internal tribal matter would be hard to fathom. Additionally, there is indeed a tribal forum

---

[9] In Walton, the Tenth Circuit went on the note that this limited exception has "'minimal precedential value' and in the twenty-six years since Dry Creek, with the exception of Dry Creek itself, we have never found the rule to apply. Walton, 443 F.3d at 1278.

11

available to hear this jurisdictional dispute. The newly-created Choctaw Tribal Court can decide the jurisdictional claim presented by Alexander.

## CONCLUSION

Based on the foregoing reasons, the Court finds it is without jurisdiction to hear the dispute presented in Alexander's First Amended Complaint. Alexander's Motion for Temporary Restraining Order (Dkt. No. 16) and Request for Preliminary Injunction contained in the First Amended Complaint (Dkt. No. 15) are therefore denied. The Motions to Dismiss by Defendants, Dusty Smith, Randy Hammons, and Christy Hammons (Dkt. Nos. 28 and 29, respectively) are rendered moot. This action is ordered dismissed in its entirety as Alexander has failed to show cause how this Court has jurisdiction over this matter.

It is so ordered this 13th day of September, 2010.

Frank H. Seay
United States District Judge
Eastern District of Oklahoma